IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HABIBA KHADIM,

Plaintiff,

v. Case No. 25-2758-JWB

ALON MANAGEMENT, XIV, LLC,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motions to dismiss and to strike. (Docs. 35, 36.) The motions have been fully briefed and are ripe for decision. (Docs. 46, 47, 53, 54.) The motion to dismiss is GRANTED and the motion to strike is DENIED AS MOOT for the reasons stated herein.

## I. Facts

The facts set forth herein are taken from the amended complaint. (Doc. 24.) Plaintiff is a Muslim female who was previously employed by Defendant at a McDonald's restaurant in Overland Park, Kansas. On June 10, 2024, Plaintiff was interviewed for a position by manager Maria Khabon. During the interview, Plaintiff was wearing her hijab, which is a close-fitting covering Muslim women wear over their hair. Plaintiff was not informed during the interview that her hijab would not be permitted to be worn if she was hired. According to Plaintiff, Ms. Khabon is also a Muslim woman. (Doc. 24 ¶ 14.) As a Muslim woman, Plaintiff's faith requires that her hijab be worn because she is required to cover her hair and body while in the company of men who are not in her immediate family. (*Id.* ¶ 15.) Plaintiff's modesty "practice is a fundamental

part of her religious observance as a Muslim" and a display of her obedience to Islamic teachings. (*Id.* ¶ 16.)

Plaintiff's first day of employment was June 12 and she wore her hijab to work. Plaintiff attended orientation after which she was provided a short-sleeved uniform. Plaintiff immediately requested a long-sleeved uniform to accommodate her religious practice of dressing modestly. (*Id.* ¶ 21.) The manager told Plaintiff that there was not a long-sleeved uniform but Plaintiff was allowed to wear an undershirt. Plaintiff, however, did not have an undershirt and was then required to wear the short-sleeved uniform during her shift. On that same day, another manager "demanded" that Plaintiff remove her hijab before entering the kitchen because it violated Defendant's policy prohibiting headscarves and told her that she would need to talk to Ms. Khabon about an exception. (*Id.* ¶ 26.) Plaintiff removed her hijab because she feared she would be terminated. When Ms. Khabon arrived at the restaurant, Plaintiff asked for an accommodation and explained the need for her to wear her hijab. Ms. Khabon rejected the request citing Defendant's policy. (*Id.* ¶ 28.) Plaintiff continued to work for Defendant and repeatedly requested accommodation. Plaintiff's requests were denied. According to Plaintiff, Ms. Khadim asserted that Islam did not require a hijab and asked Plaintiff why she believed "she had the right to wear one at work." (*Id.* ¶ 30.) Defendant's policy, however, stated that management may "accommodate requests by employees to wear religious headgear such as headscarves." (*Id.* ¶ 31.)

During her short employment with Defendant, her male coworkers persistently commented on Plaintiff's hair and her appearance while she was working. Her coworkers asked her why she wanted to cover her hair, mocked her for seeking accommodation, and made suggestive remarks about her beauty. (*Id.* ¶¶ 33, 43, 50.) Plaintiff suffered humiliation and shame due to the comments and remarks and her inability to cover her hair. In light of Defendant's repeated refusal to

accommodate Plaintiff's request to wear her hijab, Plaintiff believed that Defendant would continue to refuse to accommodate her. Plaintiff stopped working due to the conditions. Plaintiff's final shift was on July 7, 2024.

On December 5, 2024, Plaintiff submitted an EEOC charge of discrimination with the Equal Employment Opportunity Commission alleging claims of religious and sexual discrimination. (Doc. 37-1.) Plaintiff received her right to sue notice on September 24, 2025. This action was then timely filed on December 19, 2025. Defendant now moves to dismiss and to strike portions of Plaintiff's amended complaint.

## II. Standard

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III. Analysis

Plaintiff has set forth two Title VII claims in her complaint, religious discrimination based on a failure to accommodate and constructive discharge. With respect to her failure to accommodate claim, a freestanding claim for failure to accommodate does not exist under Title VII; rather, a failure to accommodate a religious practice in violation of Title VII is analyzed as a disparate treatment claim. *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 793 n.3 (10th Cir. 2020); *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) ("[Title

VII's] disparate-treatment provision prohibits actions taken with the *motive* of avoiding the need for accommodating a religious practice.").

To state a claim for religious discrimination under this theory, a plaintiff must establish that "1) the employee has a bona fide religious belief that conflicts with a job requirement, 2) the employee informed the employer of this conflict; and 3) the employer fired the employee for failing to comply with the job requirement." *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018). With respect to the third element, Plaintiff asserts that she was constructively discharged. A constructive discharge can support the termination element on a religious discrimination claim. *See Sharpe-Miller v. Walmart, Inc.*, 181 F.4th 1037, 1067 (10th Cir. 2026) ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is [treated as] a formal discharge.") (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)).

A plaintiff's burden in establishing constructive discharge is "substantial." *Id.* To establish constructive discharge, Plaintiff must show that "a reasonable person in the employee's position would view h[er] working conditions as intolerable and would feel that [s]he had no other choice but to quit." *Id.* (citation omitted). Defendant argues that the facts alleged do not support her claim. The court agrees.

As noted by the Tenth Circuit, the burden to show constructive discharge is substantial. In *Sharpe-Miller*, the plaintiff was subjected to "repeated homophobic words and gestures by coworkers and supervisors," but the court of appeals found that it was not enough to show that a "reasonable employee would have been prevented from doing his or her job by these discriminatory words and gestures." *Id.* at 1068. In *Fischer v. Forestwood Co.*, the plaintiff was heckled at work about his religion, which included questions about why he wasn't at prayer

meetings or helping on a church work project and messages left on his car windshield stating that he wasn't faithful to his prophet. 525 F.3d 972, 980–82 (10th Cir. 2008). The Tenth Circuit held that although such harassment might make the workplace unpleasant, it did not make it "so distracting that a reasonable person could no longer perform his job." *Id.* at 982.

Cases in which the court has found constructive discharge reflect that the circumstances must be so difficult that an objective employee would feel that the only option was to terminate her employment. For example, this court has held that a plaintiff sufficiently pleaded constructive discharge when, over a period of three months, her supervisor made repeated disparaging comments about her and other American employees, displayed physically violent tendencies on several occasions, and was ultimately placed on probation in retaliation for her complaints about her supervisor. *See Beck v. Figeac Aero N. Am., Inc.*, 382 F. Supp. 3d 1170, 1173–74, 1178 (D. Kan. 2019). Another example of constructive discharge recently discussed by the Tenth Circuit includes a plaintiff who received negative evaluations, was treated as incapable and asked to quit on multiple occasions due to her age and image, had her job duties revoked, and was provided with inadequate information and training to perform her new duties. *Sharpe-Miller*, 181 F.4th at 1067–68 (citing *Acrey v. Am. Sheep Indus. Ass'n*, 981 F.2d 1569, 1574 (10th Cir. 1992)).

Here, the facts alleged in the amended complaint do not rise to the level of constructive discharge recognized in *Beck* and *Sharpe-Miller*. Plaintiff alleges that she worked only nine shifts for Defendant and, in that time, she was subjected to comments about her hair, statements about her beauty, and questions regarding her need to wear a hijab. Plaintiff then states that the conditions were intolerable. (Doc. 24 ¶ 34.) Plaintiff's allegations are conclusory and fall woefully short of showing that a reasonable person would find her working conditions intolerable. Although the conditions may have been difficult for Plaintiff, her "subjective view of the work

condition is irrelevant." *Beck*, 382 F. Supp. 3d at 1178. Plaintiff must plausibly allege conditions that would make working *objectively* intolerable. *Id.* Plaintiff's response brief cites generally to the standard and her conclusory allegations but fails to identify cases that would support that her allegations have plausibly alleged a claim. It is clear from the Tenth Circuit authority that Plaintiff's allegations do not plausibly allege constructive discharge. Plaintiff has failed to plausibly allege that a reasonable person would feel that she had no other choice but to quit given the working conditions.

Plaintiff further asserts in her response brief that she suffered an additional adverse action–Defendant's failure to accommodate her religious beliefs by allowing her to wear a hijab. (Doc. 46 at 4.) Plaintiff, however, fails to identify any authority to show that such a denial of accommodation would satisfy the elements of a Title VII claim. As discussed herein, unlike the ADA, Title VII does not have a stand-alone failure to accommodate claim. Rather, a plaintiff must prove an adverse action such as being terminated for failing to adhere to a company practice on the basis of her religious beliefs. *Exby-Stolley*, 979 F.3d at 793 n.3. A denial of an accommodation is not sufficient to support a claim. *See Caspersen v. W. Union, LLC,* No. 23-CV-00923-NYW-SBP, 2023 WL 6602123, at *4 (D. Colo. Oct. 10, 2023) (discussing that the Tenth Circuit has "required an adverse employment action—i.e., something in addition to the failure to accommodate—to support Title VII religious-accommodation claims."); *Brown v. Esper*, No. 1:17-cv-02004-RM-STV, 2019 WL 6893019, at *8 (D. Colo. Dec. 18, 2019) (holding that a "denial of . . . requests for accommodation does not amount to materially adverse action for the purposes of stating a retaliation claim"), *aff'd sub nom. Brown v. Austin*, 13 F.4th 1079 (10th Cir. 2021).

Finally, Plaintiff has advanced a separate Title VII discrimination claim based on constructive discharge. This claim is essentially a repackaged claim of her failure to accommodate claim. To the extent that there is a distinction, however, this claim also fails as Plaintiff has not plausibly alleged constructive discharge. Therefore, Plaintiff's claims are both subject to dismissal.

In her response, Plaintiff seeks leave to amend if the court determines that her amended complaint is insufficient. (Doc. 46 at 6.) Plaintiff, however, has failed to comply with local rule 15.1 which requires a plaintiff to attach a proposed amended complaint when seeking leave to amend. Therefore, her request is denied on that basis. Further, Plaintiff has already amended her complaint on one occasion after the initial motion to dismiss and she does not identify additional facts that would be included in her amended complaint that would support her claim.

## IV. Conclusion

Defendant's motion to dismiss (Doc. 35) is GRANTED. Defendant's motion to strike (Doc. 36) is DENIED AS MOOT.

IT IS SO ORDERED. Dated this 7th day of October 2026.

s/ John Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE